**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

PETER ZILAHY INGERMAN                  :       Hon. Joseph H. Rodriguez
                                       :
            Plaintiff,                 :       Civil No. 08-5117
                                       :
      v.                               :
                                       :       **OPINION**
DELAWARE RIVER PORT AUTHORITY          :
                                       :
            Defendant.                 :
_____ :

***Attorney for Plaintiff:***
Frederic J. Gross, Esq.
7 East Kings Highway
Mt. Ephraim, NJ 08059

***Attorney for Defendant:***
Roxanne Leander La Roc, Esq.
Delaware River Port Authority
Office of General Counsel
2 Riverside Drive
P.O. Box 1949
Camden, NJ 08101-1949


**RODRIGUEZ**, Senior District Judge:

This matter comes before the Court on motion of Defendant Delaware River Port

Authority ("Defendant" or "DRPA" where appropriate) to dismiss Plaintiff Peter Zilahy

Ingerman's Complaint in lieu of answer pursuant to Federal Rule of Civil Procedure

12(b)(6).  Plaintiff opposes Defendant's motion and cross moves for partial summary

judgment pursuant to Federal Rule of Civil Procedure 56(a).  The central issue in this

case is whether the DRPA is in violation of Section 7 of the Privacy Act of 1974 by

including the disclosure of one's social security number ("SSN") as a prerequisite for membership in its E-ZPass Senior Citizen Program ("the Program" where appropriate). Additionally, the Court must determine whether the DRPA violated Plaintiff's equal protection and due process rights by denying him membership in the Program solely because he refused to disclose his social security number.

In his prayer for relief, Plaintiff demands that the DRPA be permanently enjoined from rejecting an applicant for its E-ZPass Senior Citizen Program solely because of refusal to disclose his or her SSN. Plaintiff also demands damages in the amount of half his E-ZPass tolls accumulated since he first submitted his application for membership. Finally, Plaintiff seeks attorneys fees, costs, interests, and such other relief that this Court deems appropriate.

## I. Facts

The facts are not in dispute. Defendant Delaware River Port Authority is a bi-state agency. See N.J. Stat. Ann. § 32:3-1; 36 P.S. § 3503 ("a single agency of both States"). The DRPA was created by parallel enactments of the State of New Jersey and the Commonwealth of Pennsylvania followed by an Act of Congress which approved the parallel enactments as an interstate compact ("Compact"). See id. Article VIII of the Compact, codified at N.J. Stat. Ann. § 32:3-9; 36 P.S. § 3588, vests the DRPA with power to levy and collect tolls, among other things, for the interstate bridges that it owns and operates between New Jersey and Pennsylvania. (Id. at ¶ 5.)

Recently, the DRPA created the E-ZPass Senior Citizen Program. (Pl. Ex. A.) This Program allows persons over the age of sixty-five years who use E-ZPass as the method of paying bridge tolls to pay a reduced or discounted toll rate when crossing the

2

DRPA's bridges.  (Id.)  The toll rate is set at fifty percent of the standard rate.  (Id.)  In order to avail oneself of this Program, one must have attained the age of sixty-five and have a New Jersey E-ZPass account.  (Id.)  Additionally, and significant for purposes of this case, one must provide the DRPA with his or her SSN.  (Id.)

Plaintiff Peter Zilahy Ingerman, Ph.D., ("Plaintiff" or "Ingerman"), applied for the Program on September 7, 2008.  (Id.)  After completing the application form–sans disclosure of his SSN–he submitted it to the DRPA.  (Compl. at ¶ 8.)  Ingerman also submitted a photocopy of his passport containing his date of birth.  (Id. at ¶ 8.)  Based solely on the fact that Ingerman did not disclose his SSN on the application form, he was refused membership in the Program.  (Id. at ¶ 9.)  A DRPA employee confirmed the basis of DRPA.  Ingerman thereafter received an instruction form in the mail which read in relevant part:

> To register for this Program, you must complete the application on the reverse, and include your Social Security Number.

(Id.)

Ingerman's counsel, Frederic J. Gross, Esq., subsequently wrote a letter to the General Counsel of the DRPA on October 3, 2008, complaining that the aforesaid requirement violated Section 7 of the Privacy Act of 1974.  (Id. at ¶ 10; Pl. Ex. B.)  Included in that letter was the relevant portion of the Privacy Act which provides:

> It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit or privilege provided by law because of such individual's refusal to disclose his social security account number.

(Pl. Ex. B (quoting Privacy Act of 1974, Pub. L. 93-579, 88 Stat. 1909, 5 U.S.C. § 552a (2004) (note)).  Also included in that letter was notification that, if Ingerman was not

allowed into the Program within thirty days, a suit would be brought against the DRPA. (Pl. Ex. B.)

Responding by letter on October 8, 2008, Assistant General Counsel of the DRPA, Roxanne Leander La Roc, Esq., took issue with the charge that the DRPA was in violation of the Privacy Act.  (Pl. Ex. C.)  She stated in relevant part,

> The Act makes it unlawful for a Federal, State or local government agency to deny any individual any right, benefit or privilege provided by law because of such individual's refusal to disclose his social security account number. Participation in DRPA's EZ-Pass [*sic*] Senior Citizen Program is not a right, benefit, or privilege provided by law.  Therefore, DRPA is permitted to require that Mr. Ingerman provide is [*sic*] social security number in order to participate in the program.

(Id.)  Plaintiff commenced this litigation shortly thereafter on October 17, 2008.  (Dkt. Entry No. 1.)

## II. Standards

### A. Motion to Dismiss

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).  Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. (internal citations omitted).

4

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom.  See Oshiver  v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  These allegations and inferences must be viewed in the light most favorable to the plaintiff.  Id.  However, the Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."  Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")).

It is not necessary for the plaintiff to plead evidence.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

### B. Summary Judgment

Summary judgment is proper if there is no genuine issue of material fact and if,

viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265  (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative

evidence that contradict those offered by the moving party.  <u>Andersen</u>, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" <u>Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs</u>, 982 F.2d 884, 890 (3d Cir. 1992) (quoting <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

<u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

As noted above, Plaintiff alleges statutory and constitutional violations in his Complaint.  First, Plaintiff alleges that the DRPA is in violation of Section 7 of the Privacy Act of 1974.  (Pl. Br.  6.)  Second, Plaintiff relatedly alleges that the DRPA is in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment "by depriving him of [Section7's] protections under color of state law. . ." (Pl. Br. 8.)  Defendant contends each claim should be dismissed for failure to state a claim upon which relief can be granted.  (Def. Br. 4-11.)  Plaintiff contends that he is entitled to partial summary judgment on the Privacy Act claim.  These issues are

discussed below.

A. Privacy Act Claim

Plaintiff's Privacy Act claim requires the resolution of three key issues. First, the Court must decide whether Section 7 solely applies to federal agencies, or state and local government agencies as well.[1] Defendant contends that Section 7 solely applies to federal agencies. (Def. Reply. Br. 3-4.) Because the DRPA is not a federal agency, it follows, Defendant contends, that the DRPA is not subject to Section 7 of the Privacy Act. In support, Defendant cites the definition of "agency" as provided in the codified portion of the Act, see 5 U.S.C. § 552a(a)(1), which references the definition for 'agency' provided in the Freedom of Information Act ("FOIA" where appropriate). See 5 U.S.C. § 552(e) (referencing definition provided in FOIA which defines "agency" as any federal agency, subsequently redesignated at § 552(f)). Based on this statutory language, which in its view trumps the un-codified "Federal, *State or local*" language contained in Section 7, Defendant contends that it is not subject to the Privacy Act because it is not a federal agency. (Def. Reply. Br. 3-4.) Defendant relies on persuasive authority from the Sixth Circuit, inter alia, to support this interpretation. (Id.) Disputing Defendant's interpretation, Plaintiff primarily relies on the plain meaning of Section 7. Pointedly, this issue is a threshold issue because neither Plaintiff nor Defendant contend that the DRPA is a *federal* agency.

The second key issue is related to the first; if Section 7 does apply to state and local government agencies, does the DRPA constitute an 'agency' such that it falls within

---

[1]    The Third Circuit has not addressed this issue.

8

the ambit of Section 7?  This question arises from the unique bi-state nature of the DRPA.  Notably, Defendant contends that it is not an agency subject to Section 7 of the Privacy Act.  (Def. Br. 7.)  Defendant analogizes itself to Rutgers University which, consistent with Krebs v. Rutgers University, is not subject to Section 7 of the Privacy Act.  See 797 F. Supp. 1246, 1253-54 (D.N.J. 1997) (acknowledging that "there are many aspects of Rutgers' operations which touch and/or intersect with the State," but concluding that "the overall effect is an independent institution divorced from direct, let alone day-to-day control.").  Because the DRPA characterizes itself as "an independent entity able to direct its own actions", it follows, the argument goes, that it is not subject to Section 7 of the Privacy Act because it is not a government agency.  (Def. Br. 7.)  In response, Plaintiff contends that the DRPA is far from analogous to "an institution of higher learning" like Rutgers University.  (Pl. Opp'n Br. 12.)  Plaintiff underscores the political accountability of both the DRPA's commissioners and the Governors who appoint them.  (Pl. Opp'n Br. 13-14.)  Following Plaintiff's logic to its natural conclusion, Plaintiff contends that the DRPA is a government agency subject to Section 7 of the Privacy of Act.

Finally, the third key issue of the Privacy Act claim concerns the E-ZPass Senior Citizen Program.  Defendant contends that the Program is not a "benefit provided by law."  (Def. Br. 4-6.)  Defendant acknowledges that the DRPA's authority to levy tolls "is derived from its Compact" codified under New Jersey and Pennsylvania law.  (Id. at 5.)  Nonetheless, Defendant maintains that nothing in the Compact "compel[s] the DRPA to provide a discount toll program to senior citizens."  (Def. Br. 5.)  Thus, Defendant hangs its hat on the language "provided by law"–which in its view, does not accurately describe

the method by which the instant Program is provided.  Plaintiff disputes this

characterization of the Program.  He contends that because the Program flows from the

DRPA's authority to levy and collect tolls, it necessarily must be provided by law.  (Pl.

Br. 17.)

      1. Whether Section 7 Applies to Federal, State, and Local Government Agencies

      The proper starting point for any statutory analysis begins with the language of

the statute.  Section 7 of the Privacy Act of 1974 provides:

> (a)(1) It shall be unlawful for any *Federal, State or local* government agency
> to deny any individual any right, benefit, or privilege provided by law because
> of such individual's refusal to disclose his social security account number.
>
> (2) the provisions of paragraph (1) of this subsection shall not apply with
> respect to
>
> (A) any disclosure which is required by Federal statute, or
>
> (B) the disclosure of a social security number to any *Federal, State or local*
> agency maintaining a system of records in existence and operating before
> January 1, 1975, if such disclosure was required under statute or regulation
> adopted prior to such date to verify the identity of an individual.
>
> (b) Any *Federal, State, or local* government agency which requests an
> individual to disclose his social security account number shall inform that
> individual whether that disclosure is mandatory or voluntary, by what
> statutory or other authority such number is solicited, and what uses will be
> made of it.

Privacy Act of 1974, Pub.L. No. 93-579,  § 7, 88 Stat. 1896, 1909 (1974),  reprinted in 5

U.S.C. § 552a (note) (2004) (emphasis added).  The language of this statute plainly

applies to either a "Federal, *State or local government agency*."  Id.  (emphasis added).

When "interpreting a statute, the Court looks first to the statute's plain meaning and, if

the statutory language is clear and unambiguous, the inquiry comes to an end."  See

Kaufman v. Allstate New Jersey Inc. Co., 561 F.3d 144, 155 (3d Cir. 2009) (citing Conn.

Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L.Ed.2d 548 (2004)).

In this case, the Court's inquiry would come to an end were it not for the definition

provision of the Privacy Act.  In Section 552a(a)(1) of Title 5, "agency" is defined by

reference to the definition provided in the Freedom of Information Act of 1966.  See 5

U.S.C. § 552(f).  That Section of Title 5 defines "agency", as provided in Section 551(1), as

including

> any executive department, military department, Government corporation,
> Government controlled corporation, or other establishment in the executive
> branch of the Government (including the Executive Office of the President),
> or any independent regulatory agency . . .

See 5 U.S.C. § 552(f)(1).  Section 551(1) then defines "agency" as "each authority of the

Government of the United States . . ."  5 U.S.C. § 551(1).  This language obviously limits

the parameters of "agency" so as to only include federal agencies.  The result then, is an

unmistakable conflict between the plain language provided in the un-codified Section

7–"federal, *state and local government agency*"–and the codified definition of "agency"

as provided by cross-reference in the FOIA.

Recognizing this conflict, the courts are split on methods of reconciliation.  While

some courts have resorted to legislative history, see Schmitt v. City of Detroit, 395 F.3d

327, 330-31 (6th Cir. 2005) (relying on legislative history to support its determination

that Section 7 only applies to federal agencies), other courts have relied on the plain

meaning of the definition of "agency" as provided in the FOIA, see Stoianoff v.

Commissioner of Motor Vehicles, 107 F. Supp. 2d 439, 444 (S.D.N.Y. 2000) ("The

Privacy Act . . . does not apply to state agencies or officials because . . . it incorporates

the FOIA definition of 'agency' as limited only to federal agencies.").  By contrast, at

least one court has relied on the plain meaning of Section 7.  See Krebs v. Rutgers University, 797 F. Supp. 1246, 1253 (D.N.J. 1992) ("The . . . FOIA, and [S]ection 552a itself apply exclusively to federal agencies, whereas [S]ection 7 of the Privacy Act extends to federal, state, and local 'agencies'. . .").  Still other courts have relied on Supreme Court precedent regarding reconciliation of conflicting un-codified and codified provisions of a statute.  See, e.g., Schwier v. Cox, 340 F.3d 1284, 1288 (11th Cir. 2003) ("[T]he Code cannot prevail over the Statutes at large when the two are inconsistent."); see also Stollenwerk v. Miller, 2006 WL 463393, at *3-*4 (E.D.Pa. Feb. 24, 2006) ("The Statutes at Large prevails over the Code when the two are inconsistent.") (citations omitted).  Because the plain meaning of Section 7 is clear, and because this Court is bound by Supreme Court precedent, the views of Krebs, Schwier, and Stollenwerk are persuasive.[2]

Section 204 of Title 1 provides that statutes set forth in the United States Code "shall . . . establish prima facie the laws of the United States."  1 U.S.C. § 204(a).  By contrast, Section 112 of Title 1 provides that "[t]he United States Statutes at Large shall be legal evidence of laws . . . "  1 U.S.C. § 112.  In case of conflict, the Statutes at Large

---

[2]      Notably, several courts have applied Section 7 of the Privacy Act to state and local government agencies without turning to the FOIA's definition of 'agency'.  See, e.g., Doe v. Sharp, 491 F. Supp. 346, 348-49 (D. Mass. 1982) (applying Section 7 of the Privacy Act to the Massachusetts Department of Public Welfare ("DPW") and finding the DPW in violation of Section 7(b) for failing to disclose the uses to be made of SSNs); Doyle v. Wilson, 529 F. Supp. 1343,  1350 (D. Del. 1982) (finding the Delaware State Treasurer and Justice of the Peace Court failed to comply with Section 7 of the Privacy Act); Greater Cleveland Welfare Rights Org. v. Bauer, 462 F. Supp. 1313, 1320 (N.D. Ohio 1978) (affording prospective relief under Section 7 of the Privacy Act against Cuyahoga County Welfare Department, among others); see also Chambers v. Klein, 419 F. Supp. 569, 579-80 (D.N.J. 1976) (applying Section 7 to the Department of Institutions and Agencies of the State of New Jersey before finding no violation due to federal statutory authorization).

prevail.  See Stephan v. United States, 319 U.S. 423, 426 (1943) (holding same).  Indeed, "the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent."  Id.  Relying on Stephan, supra, and United States v. Weldon, 377 U.S. 95, 98 n.4, 84 S. Ct. 1082, 12 L.Ed.2d 152 (1964) ("Even where Congress has enacted a codification into positive law . . . the change of arrangement . . . cannot be regarded as altering the scope and purpose" of the statute) (internal quotations omitted), the Eleventh Circuit in Schwier and the district court in Stollenwerk concluded that Section 7 of the Privacy Act applies to "any Federal, State, or local government agency".  See Schwier, 340 F.3d at 1288; and Stollenwerk, 2006 WL 463393, at *3.

        This conclusion makes sense.  By the time a bill is passed by the Senate and House of Representatives, it has received the review and judgment of both Houses of Congress.  By the time it is signed by the President, a third level of judgment and review has occurred.  To render a law meaningless then, simply because it is attached to a note in the codified version of a statute,[3] is to thwart the will of the people as carried forth by their representatives in government.  This Court is in no position to take such bold action.  Section 7 therefore applies to the very agencies listed in its language–"Federal,

---

        [3]      The Eleventh Circuit deftly explained why Section 7 became attached to Section 552a as a note rather than receiving independent codification in the United States Code:

        Within the Privacy Act itself, Congress stated that section 3 was an amendment to Title V, which governs federal administrative agencies.  Thus section 3 added a new section to Title V and was codified as 5 U.S.C. 552a.  Because Congress made no such statement about section 7 of the Privacy Act, the revisor of the U.S. Code placed section 7 in an "Historical and Statutory" note following 5 U.S.C. 552a.

Schwier, 340 F.3d at 1288.

State, or local government agencies." 5 U.S.C. § 552a (note).

Giving the language in Section 7 its due is consistent with the established canon that "legislative enactments should not be construed to render their provisions mere surplusage." See United States v. Miller, 527 F.3d 54, 62 (3d Cir. 2008) (quoting Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465, 472, 117 S. Ct. 913, 137 L.Ed.2d 93 (1997)).  Moreover, it is well settled that, in case of conflict, specific statutory language controls over general statutory language.  See Coar v. Kazimir, 990 F.2d 1413, 1420 (3d Cir. 1992) (citing Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co., 322 U.S. 102, 107 64 S. Ct. 890, 88 L.Ed. 1163 (1944)) (additional citations omitted).  Here, the general term 'agency' is used throughout the Privacy Act.  When it is used in that capacity, there is no doubt that it refers to federal agencies as defined by reference to the definition provided in the FOIA.  Yet, when agency is expressly preceded by the specific terms "Federal, State, or local government", see 5 U.S.C. 552a (note), these specific terms must control in such an instance.

In its Reply Brief, Defendant cites several cases that suggest a contrary result.  (See Def. Reply Br. 3 (citing Schmitt, supra, at 329; Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008); Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985); Polchowski v. Gorris, 714 F.2d 749, 752 (7th Cir. 1983)).  With the exception of Schmitt from the Sixth Circuit, however, these cases do not discuss Section 7 of the Privacy Act.  The discussions of Unt, Burch, and Polchowski are instead limited to the other substantive provision of the Privacy Act–namely, Section 3.  See n.5 of this Opinion (quoting discussion of Eleventh Circuit with respect to Unt and Polchowski).

14

Some background is necessary.  Section 3 amended Title 5[4] of the United States Code by introducing Section 552a after the previously codified Section 552.  See 88 Stat. at 2178.  Indeed, the language that immediately follows "Sec. 3" in the Privacy Act, see Pub. L. No. 93-579, codified at 5 U.S.C. § 552a, states in no uncertain terms, "Title 5, United States Code, is amended by adding after section 552 the following new section[.]" Id.  There is no similar statement immediately following Section 7.  Accordingly, "the revisor of the U.S. Code placed Section 7 in an 'Historical and Statutory' note following 5 U.S.C. 552a."  Schwier, 340 F.3d at 1288 (citing 5 U.S.C. 552a (note)).

Section 3 then contains such substantive provisions as "Conditions of Disclosure", see 5 U.S.C. § 552a(b), "Accounting of Certain Disclosures", id. at § 552a(c), "Access to Records", id. at § 552a(d), et cetera.  These provisions expressly give rise to private causes of action, assuming a violation of their precepts occurs.  For example, Section 3 contains a "Civil Remedies" provision, which authorizes an individual to bring a "civil action against the *agency*" in case that Section is violated.  See 5 U.S.C. § 552a(g)(1) (emphasis added).

In Burch, supra, the Second Circuit opined in part on this civil remedies provision.  See 551 F.3d at 124.  That Circuit stated, "The Privacy Act provides that '[w]henever any *agency*' fails to comply with *any provision of the statute*, 'the individual may bring a civil action against the *agency*.' " Id. (citing 5 U.S.C. § 552a(g)(1)) (emphasis added).  The Court reasoned that because 'agency' is defined by reference to the FOIA, which limits the definition to federal agencies, it follows that

---

[4]     Title V "governs federal administrative agencies."  See Schwier, 340 F.3d 1284 (citing 88 Stat. at 2178); Stollenwerk, 2006 WL 463393, at *3.

remedies under the Privacy Act are solely limited to violations by federal agencies.  Id. Defendant contends Burch supports its position that the Privacy Act only applies to federal agencies.  (Def. Reply Br. 3-4.)  At first glance, this interpretation seems accurate given the broad language used by the Second Circuit–"whenever any [federal] agency fails to comply with *any provision of the statute*, the individual may bring a civil action against the [federal] agency."  Burch, supra, at 124 (alteration in original).  But upon further examination, it is evident that the Second Circuit only meant Section 3–not Section 7, when it referred to "any provision of the statute."  Two reasons justify this conclusion.

First, each of the alleged violations discussed in Burch arose under Section 3. There, the plaintiff brought a Privacy Act claim against a third-party debt collection agency that provided collection services for certain federal agencies.  See Burch, 551 F.3d at 123.  The plaintiff alleged that the collection agency "was photocopying his security clearance packages, keeping a permanent record of them in his personal file, and otherwise mishandling his private and personal information. . ."  Id.  Accordingly, he brought a private cause of action under the Privacy Act.  Id.  None of these claims fall within the ambit of Section 7, which deals solely with the disclosure of social security numbers.  See 5 U.S.C. 552a (note).  Instead, these claims fall within Section 3.  Thus, when the Second Circuit referred to "any provision of the statute", see Burch, supra, at 124, it was referring to the violations alleged under Section 3.[5]

---

[5]        This situation is similar to that of Schwier v. Cox.  See 340 F.3d at 1289.  There, the Eleventh Circuit reversed the district court in part because the court found Section 7 "does not provide a private right of action."  Id.  The Circuit observed that the district court misconstrued Dittman v. California, 191 F.3d 1020 (9th Cir. 1999), which ruled that " '[t]he civil remedy provisions of *the statute* do not apply against private individuals, state agencies, private

Second, the civil remedies provision only applies to violations that arise under provisions in Section 3–not "any provision of the statute" so as to also include Section 7. Accord Schwier v. Cox, 340 F.3d 1284, 1289 (11th Cir. 2003) ("[T]he remedial scheme of section 3 applies only to section 3 and has no bearing on section 7."); see also Greater Cleveland Welfare Rights Org., 462 F. Supp. at 1320 (recognizing an implied private cause of action under Section 7 because that section is "silent on the issue of rights afforded by it."). The language of the civil remedies provision compels this result. It provides:

> (g)(1) Civil Remedies.–Whenever any agency

>> (A) makes a determination *under subsection (d)(3) of this section* not to amend an individual's record in accordance with his request, or fails to make such review in conformity with *that subsection*;

>> (B) refuses to comply with an individual request *under subsection (d)(1) of this section*;

>> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to

---

entities, or state and local officials.' " Id. (citing Dittman, 191 F.3d at 1026 (quoting Unt, 765 F.2d at 1447)). Noting that Dittman only discussed violations under Section 3, the Eleventh Circuit opined:

> In Dittman, the Ninth Circuit relied on two cases which involved only section 3 of the Privacy Act. Thus, when the Ninth Circuit quoted Unt v. Aerospace Corp. above, the phrase, "the statute," referred to section 3 of the Privacy act, not section 7. Unt's holding had no relevance to the facts of Dittman or to the present case because in Unt, the plaintiff was trying to sue a non-government entity for violations of section 3 of the Privacy Act, which pertains only to federal agencies.

> . . . .

> In addition, Dittman relied on the Seventh Circuit's holding in Polchowski v. Gorris. [That case] also had no relevance to the facts of Dittman because, again, Polchowski involved enforcement of section 3 of the Privacy Act, rather than section 7.

Schwier, 340 F.3d at 1289 (alteration in original) (citations omitted).

> assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
>
> (D) fails to comply *with any other provision of this section or any rule promulgated thereunder*, in such a way as to have an adverse effect on an individual,
>
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1) (emphasis added).  There is no doubt that by referring only to "agency", this provision speaks of federal agencies, as defined in the FOIA.  But there is also no doubt that, by consistently referring to alleged violations "of *this section*", this provision only applies to violations under Section 3.  Nothing in this civil remedies provision, therefore, precludes the availability of remedies against "Federal, State or local government agenc[ies]," as expressly provided in Section 7, when there is a violation under Section 7.  See 5 U.S.C. 552a (note).  In light of the foregoing, Defendant's reliance on Burch, Unt, and Polchowski is misplaced.

Defendant also relies on Schmitt v. City of Detroit, 395 F.3d 327 (6th Cir. 2005). In that case, the plaintiff sued the City of Detroit because a vendor, hired by the city to print mailings regarding income tax obligations, printed social security numbers on mailed envelopes.  Schmitt, 395 F.3d at 328.  Despite a written apology from the Mayor of Detroit, the plaintiff claimed a violation under Section 7 of the Privacy Act.  Id.  Thus, unlike Burch, Unt, and Polchowski, Schmitt directly confronted an alleged violation under Section 7.  The Sixth Circuit quickly recognized the conflict between the plain language of Section 7 and the definition of agency as provided in the FOIA.  Id. at 329.

18

In its view, the codified and "unambiguous definition of a core term" could not "appl[y] only part of the time." Id. at 330.  Given certain legislative history–which it found to weigh in favor of limiting the Privacy Act to only federal agencies–the Sixth Circuit dismissed the plaintiff's complaint for failure to state a claim.[6] Id. at 331.

> For example, the Circuit cited the following language from Senate Report 93-118:

> > The Committee has cut back on the bill's original coverage and ordered the Privacy Commission to make a study of State, local and private data banks and recommend precise application of the Act where needed.

S. Report. No. 93-118 (1974), as reprinted in 1974 U.S.C.C.A.N. 6916, 6933.  Notably, this language is located under the subheading–"Coverage: Private, State and Local".  Id. at 6932.  Finding it persuasive, the Sixth Circuit dismissed other language in the Senate Report which it found unpersuasive.  Schmitt, supra, at 331.  That 'other language' is located under the subheading–"Social Security Number and Identifiers".  See 1974 U.S.C.C.A.N. 6916, 6945.  It states in relevant part:

> > The HEW's Secretary's committee came to the following conclusions about the need for this matter: If the SSN is to be stopped from becoming a de facto Standard Universal Identifier, the individual must have the option not to disclose his number unless required to do so by the Federal Government for

---

[6]      In reaching this conclusion, the Sixth Circuit did not discuss its previous decision of Lawson v. Shelby County, Tennessee, 211 F.3d 331, 335 (6th Cir. 2000).  There, the plaintiffs alleged that certain state officials, including members of the Shelby County Election Commission, violated Section 7 of the Privacy Act by denying their right to vote solely because they failed to disclose their social security numbers.  Lawson, 211 F.3d at 335.  The Sixth Circuit recognized that under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), "a federal court may enjoin a 'state official' from violating federal law."  Lawson, supra, at 335.  The Circuit then observed that this exception to Eleventh Amendment immunity is limited to "prospective nonmonetary relief".  Id.  Because the plaintiffs requested such relief against the state officials for violating Section 7, the Sixth Circuit permitted their cause of action.  Additionally, the Sixth Circuit permitted the plaintiffs' claims for declaratory relief and attorneys' fees.  Id.  Perhaps because Schmitt involved the dissemination of social security numbers, rather than the forced disclosure of such numbers in Lawson, the Sixth Circuit did not discuss Lawson in Schmitt.

> legitimate Federal program purposes, and there must be legal authority for
> his refusal.  Since existing law offers no such clear authority, we recommend
> specific, preemptive, Federal legislation providing that the individual has the
> right to refuse to disclose his SSN to any person or organization that does not
> have specific authority provided by Federal statute to request it . . . and the
> right to redress if his lawful refusal to disclose his SSN results in a denial of
> a benefit.

Id.  These recommendations clearly found their way into Section 7 of the Privacy Act.

For example, under Section 7(b), any federal, state, or local government agency which

requires disclosure of a social security number must provide the federal statute that

authorizes such disclosure.  5 U.S.C. § 552a (note).  Nevertheless, the Sixth Circuit

dismissed this language because it fails to expressly mention whether Section 7 applies

to state and local government agencies.  Other evidence is telling, however.

Under this same subsection of the Senate Report, a Privacy Commission study

was recommended for further study.  Schmitt, 395 F.3d at 331 (citing 1974 U.S.C.C.A.N.

6916, 6946).  That recommendation made its way into the Privacy Act at Section 5.  See

5. U.S.C. § 552a (note).  The Privacy Commission's mandate was to study the use of

social security numbers, inter alia, as they relate to (1) the identification of individuals

and (2) the access to "centralize[d] information systems".  See Personal Privacy in an

Information Society: The Report of the Privacy Protection Study Commission Ch. 16

(1977) available at http://aspe.hhs.gov/datacncl/1977privacy/c16.htm.  The Report was

transmitted to President Jimmy Carter on July 12, 1977.  Id.  It referred to Section 7 of

the Privacy Act as "the first step in establishing a federal policy limiting compulsory

divulgence of the SSN."  Id.  Significantly, the Report commented on the then-negligible

"impact" of Section 7 on federal, *state*, *and local* government agencies:

The Privacy Act's Section 7 appears to have had little impact on Federal,

> State, and local government agencies.  Most federal agencies have been able
> to cite some legal authority in effect before January 1, 1975 that lets them to
> continue to demand disclosure of the SSN.  Although a few State and local
> agencies have abandoned the use of the SSN because they lack such authority,
> the Tax Reform Act grants most State and local government agencies that
> found its continued use necessary the authority to demand it.

Id.  This commentary clearly militates against the Sixth Circuit's holding in Schmitt.

Why would state and local agencies comply with Section 7 of the Privacy Act, as

indicated by the commentary, if the Privacy Act did not apply to them?

If more is needed, the first recommendation of the Report is "that Section 7 of the

Privacy Act be retained for *government agencies*."  Id.  (emphasis added).  By referring

to "government agencies" as a group, the Report encapsulates federal, state, and local

government agencies as expressly provided in Section 7.  The Report then states, "[T]he

Commission does not believe that legal restrictions on the collection or use of the SSN

should be made to apply to private organizations. . ."  Id.  This observation is highly

relevant.  Consistent with Plaintiff's contention, Section 3 draws the line of applicability

between *federal and state* agencies.  On the other hand, Section 7 draw its line of

applicability between *public and private* agencies.

Although the Privacy Commission Report is a secondary source, its commentary

further supports this Court's determination. Section 7 of the Privacy Act applies to the

agencies listed in its text– "Federal, State, or local government agencies."  5 U.S.C. §

552a (note).  As a result, this Court respectfully finds Schmitt unpersuasive.  Having

ruled as much, the Court now turns to whether the bi-state DRPA is within the ambit of

the Act.

21

 2. Whether the Delaware River Port Authority is Subject to Section 7 of the Privacy Act

Defendant cites Krebs v. Rutgers University, 797 F. Supp. 1246, 1248 (D.N.J. 1992), as providing the appropriate framework to determine whether the DRPA is an agency subject to Section 7 of the Privacy Act.  (Def. Br. 6-7.)  Plaintiff does not contest that Krebs provides the appropriate framework; rather, Plaintiff contests Defendant's contention that the DRPA is sufficiently analogous to Rutgers University such that it is not an "agency" subject to Section 7.  (Def. Br. 12-14.)  This Court undertakes the Krebs analysis to determine whether Section 7 applies to the unique bi-state agency that is the DRPA.

In Krebs, students at Rutgers University brought suit against the school due to its use and collection of social security numbers.  See Krebs, supra, at 1248.  The students alleged, inter alia, that Rutgers was in violation of the Privacy Act of 1974.  Id.  The students' Privacy Act claim hinged on whether Section 7 applied to Rutgers University.  Id. at 1253.  Concluding that it did not, the District Court opined, " the relevant inquiry is government control over and involvement in Rutgers' operations."  Id. at 1254.  As evidence of government control, the Court looked to precedent regarding the inapplicability of Eleventh Amendment immunity to Rutgers University.  Id. at 1254-55 (citing Kovats v. Rutgers, the State University, 822 F.2d 1303, 1312 (3d Cir. 1987) (finding Rutgers University not an 'arm of the state' and therefore not entitled to Eleventh Amendment immunity)).  As further evidence, the Court observed that Rutgers: (1) originated as a private entity; (2) is not subject to review by the New Jersey Chancellor of Higher Education; and (3) retains a significant amount of autonomy and decision-making power subject to its own accountability.  Id.  The only check imposed

by the State on Rutgers, the Court acknowledged, was to operate within the state budget and laws and regulations of New Jersey.  Id. at 1255.  Because this collective evidence demonstrated insufficient government control over and involvement in Rutgers, the court ruled Rutgers University was not a "state agency or government controlled corporation" subject to Section 7 of the Privacy Act.  Id. at 1256.

Like Rutgers University, the DRPA is not entitled to Eleventh Amendment immunity.  See Peters v. Delaware River Port Authority, 16 F.3d 1346, 1352 (3d Cir. 1994).  Despite this lack of immunity, the State of New Jersey and the Commonwealth of Pennsylvania exhibit sufficient control over and involvement in the DRPA to render it subject to Section 7 of the Privacy Act.  Krebs recognized the question of applicability of Section 7 to Rutgers turned on "government control over and involvement in Rutgers' operations."  See 797 F. Supp. at 1254.  Finding helpful the Eleventh Amendment analysis of Kovats on this issue, the district court in Krebs opined:

> While obviously not dispositive in the case at hand, the [Third] Circuit's Eleventh Amendment considerations and conclusions are clearly relevant to this court's necessary determination as to *whether Rutgers is so controlled by the State* that it qualifies as an agency or government controlled corporation under the Privacy Act.

Id. at 1255 (citing Kovats, 822 F.2d at 1312).  In Kovats, the Third Circuit recognized the considerable degree of autonomy that Rutgers enjoys, observing that it is "subject only to minimal state supervision and control."  Kovats, 822 F.2d at 1311.  Clearly then, this factor weighed *against* granting Eleventh Amendment immunity to Rutgers.

By contrast, the only factor that weighed *in favor* of granting Eleventh Amendment immunity to the DRPA in Peters was autonomy and state control.  See Peters, 16 F.3d at 1352 ("[T]he significant control the states have through appointing the

DRPA's Board weighs slightly in favor of the DRPA's being an alter ego of the states.").

It was wholly due to factors one and two–source of payment for any judgment and

status under state law (source of payment being most important)–that the Third Circuit

denied applicability of Eleventh Amendment immunity to the DRPA.  See Peters, 16

F.3d at 1350-52 ("The first of the three factors is the most important one." (citing Bolden

v. Se. Pa. Transp. Auth., 953 F.2d 807, 816, 818 (3d Cir. 1991))).  Because the Krebs test

hinges on government control and involvement, this evidence weighs in favor of finding

the DRPA to be a government agency subject to Section 7 of the Privacy Act.

Defendant's attempt to cast the denial of Eleventh Amendment immunity in a positive

light, therefore, is misguided.  (Def. Br. 7.)

 Additionally, an independent analysis of the extent of government control over

and involvement in the DRPA, colored with its fixed public nature, further demonstrates

that it is subject to Section 7.  The Agreement between the State of New Jersey and the

Commonwealth of Pennsylvania provides in relevant part, "It is highly desirable that

there be *a single agency of both states* empowered to further the . . . interests of both

states."  DRPA Compact, codified in N.J. Stat. Ann. § 32:3-1; 36 P.S. § 3503 (emphasis

added).  Article I of the Compact then provides:

> The body corporate and politic, heretofore created and known as the Delaware
> River Joint Commission hereby is continued under the name of the Delaware
> River Port Authority . . . which shall constitute the *public corporate
> instrumentality* of the Commonwealth of Pennsylvania and the State of New
> Jersey for the following *public purposes*, and which shall be deemed to be
> exercising an *essential governmental function* . . .

Id. at Art. I, codified in N.J. Stat. Ann. § 32:3-2; 36 P.S. § 3503 (emphasis added).

Evinced from the above language, the DRPA was founded as a public entity designed for

performing essential governmental functions.  Indeed, it was created by Compact of New Jersey and Pennsylvania "to develop the ports of Philadelphia and Camden and to operate bridges and provide mass transportation across the Delaware River."  See Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 571 (3d Cir. 2002). Pursuant to the Compact Clause, see U.S. Const. art. I, § 10, cl. 3, Congress approved the DRPA Compact in 1932.[7]  See Fraternal Order of Police, 290 F.3d at 571.  These factors paint the DRPA in a much different light than Rutgers University, which originated as a private entity.

Apart from its fixed public nature, there is sufficient government control over and involvement in the DRPA to render it subject to Section 7.  For example, the DRPA consists of sixteen commissioners, eight of whom serve by appointment of the Governor of New Jersey, and six of whom serve by appointment of the Governor of Pennsylvania. See DRPA Compact, Art. II, codified in N.J. Stat. Ann. § 32:3-3; 36 P.S. § 3503.  The remaining two commissioners for Pennsylvania consist of the Auditor General and the State Treasurer, each of whom sit ex-officio.  Id.  Each of the commissioners is politically accountable.  See Pievsky, 98 F.3d at 736 ("[T]he DRPA Commissioners must be accountable to the administration in office in order for the DRPA to function properly."). The Governor of Pennsylvania has the authority to remove Pennsylvania's appointed commissioners "at will and prior to the expiration of the[ir] term."  Id. at 739 (alteration

---

[7]     The Compact Clause authorizes states to enter into agreements with each other "regarding matters of common concern" so long as "they obtain the consent of Congress."  See Spence-Parker v. Delaware River and Bay Auth., --- F. Supp. 2d ----, 2009 WL 872432 (D.N.J. 2009) (quoting Int'l Union of Operating Eng'rs, Local 542 v. Delaware River Joint Toll Bridge Comm'n, 311 F.3d 273, 274 (3d Cir. 2002)).  Congressional approval then "transforms the Compact into an agreement pursuant to federal law."  See Pievsky v. Ridge, 98 F.3d 730, 733 (3d Cir. 1996).

in original).  The minutes of each meeting of the DRPA must be transmitted to both Governors "at their respective executive chambers", see DRPA Compact, Art. III, codified in N.J. Stat. Ann. § 32:3–4.1; 36 P.S. § 3503, and each Governor has the power to veto any action taken at said meetings within ten days of such transmission.  Id. Thus, unlike Rutgers University, which the court in Krebs observed is not subject to review by the New Jersey Chancellor of Higher Education, see 797 F. Supp. at 1255, the DRPA is subject to direct review by the Governors of New Jersey and Pennsylvania.

There is more.  A majority of each state's appointed commissioners must vote in favor of any DRPA action in order for it to be binding.  DRPA Compact, Art. III, codified in N.J. Stat. Ann. § 32:3–4; 36 P.S. § 3503.  Only by passage of parallel legislation in both States, moreover, may additional powers be granted or additional duties be imposed on the DRPA.  See Fraternal Order of Police, 290 F.3d at 571 (citations omitted).  These rules exhibit each state's control over and direct involvement in the DRPA.  Given not only the threat of veto but also the threat of removal from office, the requirement of voting majorities from each state, and the mandate of parallel legislation, there is sufficient government control over and involvement in the DRPA to render it a government agency subject to Section 7 of the Privacy Act.

The fact that the DRPA, as a 'bi-state' agency, does not fall neatly within the precise confines of a "Federal, State or local government agency", see 5 U.S.C. § 552a (note), does not change the conclusion that it is subject to Section 7.  As put by the Honorable Clarkson S. Fisher, "The Privacy Act was designed to discourage improper uses of social security numbers and to allow individuals the opportunity to make an intelligent decision regarding its disclosure."  See Yeager v. Hackensack Water Co., 615

26

F. Supp. 1087, 1091 (D.N.J. 1985).  Given this corrective purpose, the Privacy Act surely represents a remedial statute.  "Remedial statutes", such as the Privacy Act, "should be construed liberally to include those cases which are within the spirit of the law, and all reasonable doubts should be construed in favor of applicability of the statute to the case."  Sutherland, <u>Statutory Construction</u> § 60:2 (6th ed. 2008).  Here, the Court does not force a square peg into a round hole by concluding that the DRPA, even as a 'bi-state' agency, falls within the ambit of coverage provided by Section 7.  Such inclusion is within the spirit of the statute, especially given the amount of government control over and involvement in the DRPA.  For the foregoing reasons then, the DRPA is subject to Section 7 of the Privacy Act.

3.  Whether the DRPA E-ZPass Senior Citizen Discount Program<br>Is a Right, Benefit, or Privilege Provided by Law

Defendant contends that the E-ZPass Senior Citizen Program is not a benefit provided by law.  (Def. Br. 4.)  The focus of Defendant's contention in this regard is on the phrase–"provided by law."[8]  (<u>Id.</u>)  Defendant concedes that the DRPA operates pursuant to its Compact, as codified in New Jersey and Pennsylvania statutes.  Nevertheless, Defendant contends that nothing in the Compact compels the DRPA "to provide a discount toll program to senior citizens."  (<u>Id.</u> at 5.)  Defendant further contends that the gubernatorial appointments to the DRPA do not transform its acts "into the law of either Pennsylvania and New Jersey."  (<u>Id.</u>)  Finally, Defendant contends that the Program is not a "federal discount program" as provided in Section 552a(12) of

---

[8]     Because the Program bestows a fifty-percent discount on tolls to its senior citizen members, there is no dispute that the Program constitutes a benefit for its members.

Title 5.  (Id.)

In response, Plaintiff contends Defendant misconstrues the Privacy Act by suggesting a program must be a "federal discount program" in order to be subject to the Privacy Act.  This contention is correct.  Nothing in the language of Section 7, applicable to the case at bar, speaks of a "federal benefit program."  While applicability of the "federal benefit program" clause may apply to other portions of the Privacy Act, it has no application to the instant case.  As a result, Defendant's contention on this point is unavailing.

Next, Plaintiff disputes Defendant's contention that the Program is not a benefit provided by law.  (Pl. Opp'n Br. 6-7 n.3)  In rather flowery language, Plaintiff states:

> Defendant fatuously claims that 'the toll discount program is not a benefit provided by law.'  The toll discount program obviously is a benefit and not a detriment, for it reduces the toll which seniors must pay by 50%.  Likewise, it is clear beyond quibble that each and every toll tariff promulgated by the DRPA is established by law, and not by some officious intermeddler such as Santa Claus or the Tooth Fairy.

(Id.)  Turning to logic rather than humor, Plaintiff further contends:

> The DRPA, in the exercise of its legal authority under the Compact, established the bridge tolls and the senior discount program.  If the program were not established by law, the same specious logic would lead to the conclusion that none of the DRPA's bridge tolls is established by law.  Yet toll evasion is a violation of the law which can be prosecuted, as signs near the DRPA's toll booths proclaim.  Surely a prosecution for failing to pay the toll could not be defeated on the theory that the tolls were not provided by law.  Necessarily, DRPA's senior discount program, being part of the agency's toll-setting function, is established by law.

(Pl. Opp'n Br. 17) (internal quotations omitted).  Defendant does not respond to Plaintiff's counter argument in its Reply Brief.   As such, the Court examines the

language in the DRPA Compact to determine whether Defendant's contention has merit.

Article VIII authorizes the DRPA "to make and enforce such rules and regulations and to establish, levy and collect . . . such *tolls*, rents, *rates*, and other charges. . ."  DRPA Compact, art. VIII, <u>codified in</u> N.J. Stat. Ann. § 32:3–8; 36 P.S. § 3503 (emphasis added).  The DRPA's E-ZPass Senior Citizen Program, which provides a discounted toll rate for senior citizens, falls well within this statutory mandate.  Pursuant to Article VIII, the DRPA uses its statutory power to "establish" the "tolls", <u>see</u> <u>id.</u>, at a discounted rate for senior citizens who avail themselves of the Program.

Moreover, given that the Governors of New Jersey and Pennsylvania may veto any acts of the DRPA Board of Commissioners, <u>see</u> DRPA Compact, art. III, <u>codified in</u> N.J. Stat. Ann. § 32:3–4.3; 36 P.S. § 3503, any and all acts of the DRPA receive the legal blessing of the States via gubernatorial acquiescence.  In the instant case, either Governor could have vetoed the Program after receiving the DRPA board meeting minutes.  They did not.  As a result of this acquiescence, the discounted toll rates became the new toll rates for those seniors who are members of the Program.  These seniors, just as those who are not members in the Program, are still subject to fines or prosecution if they attempt to evade the tolls.  In light of the foregoing, it is no misnomer to say the Program is "provided by law".  Defendant's argument is consequently unavailing.

### 4. The DRPA is in Violation of Section 7 of the Privacy Act of 1974

Defendant Delaware River Port Authority is in violation of Section 7(a)(1)

of the Privacy Act of 1974.  Plaintiff was denied a benefit provided by law by the

DRPA solely because he refused to disclose his SSN.  Additionally, Defendant is in

violation of Section 7(b).  That section provides:

> Any Federal, State, or local government agency which requests an individual
> to disclose his social security account number shall inform that individual
> whether that disclosure is mandatory or voluntary, by what statutory or other
> authority such number is solicited, and what uses will be made of it.

Privacy Act of 1974, Pub.L. No. 93-579, § 7(b), 88 Stat. 1896, 1909 (1974), reprinted in 5

U.S.C. § 552a (note) (2004).  Here, Defendant's application form[9] does not provide a

federal statute authorizing its requirement of SSN disclosure, and Defendant does not

contend that it is covered under the grandfather exception of Section 7(2)(B).  (Pl. Ex.

A.)  To be sure, the form does provide in general terms the purported usage of the SSN.

(Id.)  It states:

> Your SS# is used only once as the first point of entry into our voluntary
> program.  We have a large database of participants and many share the same
> first and last names.
>
> Once your SS# is entered in our database, the form on which your SS# is
> received is shredded and securely discarded.

---

[9]        Notably, the DRPA E-ZPass Senior Citizen Program is voluntary.  In other words,
senior citizens are not required to enter into the Program.  The mere fact that the Program is
voluntary, however, is of no consequence to the Court's analysis.  The critical fact which is fatal
to Defendant is that the disclosure of one's SSN on the application form is mandatory.
Defendant cannot require such disclosure without either citing a federal statute granting
authorization for disclosure or by showing that the requirement is covered by the grandfather
provision of Section 7(2)(B).  Here, Defendant does neither.

        Stollenwerk v. Miller is directly on point.  See generally 2006 WL 463393 (E.D.Pa. Feb.
24, 2006).  Handgun permits and right to carry permits, as discussed in that case, also are
voluntary.  In other words, no one is required to either own a handgun or receive a right to carry
permit by mere fact of citizenship.  The critical fact that was fatal to the defendant was that the
disclosure of one's SSN on the application form was mandatory.  Stollenwerk, 2006 WL
463393, at *1.  Having found the requirement for disclosure did not fall into either of the
exceptions listed above, the district court ruled "Stollenwerk's rights under section 7 of the
Privacy Act were violated."  Id. at *7.

> A very limited number of staff has access to the database, and all social security numbers are encrypted in a way that they cannot be viewed by any unauthorized individuals.  No data can be viewed by looking directly at the database.  You must have login rights in order to access any sensitive data.
>
> We will not share your SS# with E-ZPass, and we never share your information with other agencies or organizations.
>
> To prevent fraudulent use of the Senior Citizen Program, we frequently audit our database using information provided by the Social Security Administration.

(Pl. Ex. A.)  Thus, the DRPA explains that it uses the SSN as a "first point of entry" into its database.  (Id.)  It then retains the number to prevent fraudulent use of the Program.  (Id.)  The DRPA then prudently assures the applicant that steps will be taken to safeguard the number.  (Id.)  This assurance is laudable.  But in light of the fact that the E-ZPass Senior Citizen Program is ineligible for the grandfather exception–having not been in existence prior to 1975–it must also provide federal statutory authority for requiring disclosure of the SSN.  See Stollenwerk, supra, at *6-*7.  Because the application form lacks this necessary criterion, the DRPA is in violation of Section 7(b).

This case is easily distinguishable from Chambers v. Klein.  See generally 419 F. Supp. 569 (D.N.J. 1976).  In that case, the federal Aid to Families with Dependent Children program ("AFDC"), see 42 U.S.C. §§ 601-610, required disclosure of SSNs as a condition for all family members who sought assistance from the program.  See Chambers, 419 F. Supp. at 571.  Accordingly, county welfare agencies required the disclosure of the SSN by any person applying for the program.  Id. at 572.  The plaintiffs alleged, inter alia, that the program violated their statutory rights under the Privacy Act. Id. at 579.  Significantly, the State of New Jersey made no use of the SSNs; it merely required them consistent with the dictates of 42 U.S.C. § 602(a)(25) and 42 C.F.R. §

232.10.  Id.  The plaintiffs contended that the State should not require the SSNs if it had

no plans to use them.  Id.  The State, on the other hand, underscored that failure to

comply with federal statutes and regulations could lead to termination of AFDC funding.

Id.  Despite the fact that the State was in technical violation of Section 7(b) because it

failed to disclose what use the SSNs would be put to, the district court in Chambers

refused to grant judgment in favor of the plaintiffs.  Id. at 580.  The court placed

"particular weight" upon the fact that the State was required to obtain the SSNs

pursuant to federal statute and regulation.  Id.  It further observed that

> an injunction prohibiting the State defendants from carrying out the
> regulations in dispute would put in jeopardy funding which the State of New
> Jersey is receiving under the AFDC program.  The issuance of such an
> injunction having such a far-reaching effect is not warranted . . . because of
> a technical violation of the Privacy Act.

Id.

Here, by contrast, the DRPA has no federal statute or regulation on which to hang

its hat.  It requires on its own the disclosure of SSNs as a "first point of entry" and "[t]o

prevent fraudulent use of the Senior Citizen Program".  (Pl. Ex. A.)  Even if the DRPA

ultimately shreds and discards the form on which the SSN is provided, such action is

taken only after the SSN is entered into its "very large database".  (Id.)  Without having

federal authorization to require applicants to disclose the SSNs, the DRPA is acting

wholly inconsistent with the remedial purpose of the Privacy Act.  This is not a mere

"technical violation" like the one observed in Chambers, supra, at 580.  Because "the use

of Social Security numbers as universal identifiers in both public and private sectors is

'one of the most serious manifestations of privacy concerns in the Nation[]", see

Stollenwerk, 2006 WL 463393 at *3 (quoting S. Rep. No. 93-1183, reprinted in 1974

U.S.C.C.A.N. 6916, 6943) (internal quotations omitted), the DRPA may not require disclosure of SSNs without providing federal statutory authority consistent with the Act. In sum, the DRPA is in violation of Section 7(a)(1) and Section 7(b) of the Privacy Act of 1974.

<u>5. Remedies</u>

Having found that the DRPA is subject to Section 7 the Privacy Act of 1974, and having found that the DRPA is in violation of that Section, the Court must now decide the appropriate remedy. Plaintiff requests that the DRPA be permanently enjoined from requiring disclosure of SSNs for membership in the program. (Compl. p.6 ¶ A.) Plaintiff also requests damages in the amount of half his tolls since "he first submitted his application for participation in The Program." (<u>Id.</u> at ¶ B.) Finally, Plaintiff requests attorneys fees, costs, interest, "and such other further relief which the Court finds appropriate . . ."[10] (<u>Id.</u> at ¶¶ C-D.)

Unlike Section 3, Section 7 of the Privacy Act does not have an express civil remedies provision. <u>See</u> 5 U.S.C. § 552a (note). Courts have nonetheless provided prospective relief for violations occurring under Section 7. <u>See, e.g.</u>, <u>Lawson</u>, 211 F.3d at 335 (permitting prospective injunctive relief under <u>Ex parte Young</u> against certain state and county officials); <u>Stollenwerk</u>, 2006 WL 463393, at *8 (enjoining the defendants from denying handgun permits or right to carry permits due to failure to disclose SSNs); <u>Russell v. Bd. of Plumbing Exam'rs</u>, 74 F. Supp. 2d 339, 348 (S.D.N.Y. 1999) (providing prospective injunctive relief that requires, in part, stating on the licensing form that

---

[10]      <u>See</u> Part IV of this Opinion.

disclosure of the SSN is optional); <u>Greater Cleveland Welfare Rights Org.</u>, 462 F. Supp. at 1319 (finding implied private cause of action under Section 7(b) for prospective relief); <u>Yeager</u>, 615 F. Supp. at 1091-92 (observing "relief sought should be tailored to enable plaintiffs and others to make an informed, knowing and educated decision" regarding disclosure of their SSNs).  Here, permanently enjoining the DRPA from requiring the disclosure of SSNs as a condition for entry into the E-ZPass Senior Citizen Program is consistent with the remedial purpose of the Act and the above-cited precedent.  As a result, Plaintiff's requested injunctive relief is granted.  Defendant DRPA shall inform applicants hereto forward that disclosure of the SSN is voluntary, consistent with the dictates of Section 7(b).  Defendant DRPA shall no longer reject an applicant solely because of refusal to disclose his or her social security number.[11]

Next, Plaintiff's request for damages in the amount of half his tolls since he first submitted his application for participation in the Program is denied.  No court has awarded monetary damages under Section 7, and this Court declines the invitation today.  <u>See</u> <u>Stollenwerk</u>, <u>supra</u>, at *7 ("Section 7 does not allow damages, only injunctive relief." (citing <u>Pontbriand v. Sundlun</u>, 699 A.2d 856, 869,  (R.I. 1997) ("[W]e have found no precedential authority for the award of remedies [under Section 7] other than injunctive relief."))).

---

[11]     Of course, an applicant may voluntarily provide his or her SSN, assuming he or she has no problem with such disclosure.  The DRPA may then use the SSN in accordance with its stated terms on the form.  As noted by the district court in <u>Greater Cleveland Welfare Rights Org.</u>, this type of prospective relief is entirely appropriate under the Privacy Act.  <u>See</u>, 462 F. Supp. at 1320.  If Ingerman, or any other person for that matter, "declines to disclose his [SSN], he may find his application takes significantly longer to process than that of an applicant who has disclosed his [SSN]."  <u>Stollenwerk</u>, 2003 WL 463393, at *7.  Nevertheless, it is his choice to make commensurate with the purpose of the Act.  <u>Id.</u>

B. Constitutional Claims

Lastly, Plaintiff alleges that Defendant has violated his constitutional rights of due process and equal protection.  (Compl. ¶¶ 18-19.)  Plaintiff asserts these claims via Section 1983 of Title 42 of the United States Code.  (Id. at ¶2.)  These matters can be disposed of rather quickly.  In a recent non-precedential opinion, the Third Circuit held "[r]equiring disclosure of a social security number does not so threaten the sanctity of individual privacy as to require constitutional protection."  McCauley v. Computer Aid, Inc., 242 Fed. Appx. 810, 813, 2007 WL 1830872 (3d Cir. June 27, 2007) (citing Cassano v. Carb, 436 F.3d 74, 75 (2d Cir. 2006); McElrath v. Califano, 615 F.2d 434, 441 (7th Cir. 1980)).  In other words, the right to privacy in one's SSN is a statutory right only.  See Stollenwerk, 2003 WL 463393, at *3 n.10.  Accordingly, Plaintiff's due process claim is unavailing.  Defendant's motion to dismiss this claim is therefore granted.

Plaintiff's equal protection claim meets a similar fate.  Much like the plaintiff in McCauley, supra, at 813, here, Plaintiff fails to allege that the DRPA treated him differently from those similarly situated to him.  Consequently, Plaintiff's equal protection claim is unavailing.  Defendant's motion to dismiss this claim is therefore granted.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  Defendant's motion to dismiss Plaintiff's constitutional claims under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment is granted.  Defendant's motion to dismiss Plaintiff's claim under Section 7 of the Privacy Act of 1974, however, is denied.  Plaintiff's motion for partial summary judgment as to

the Privacy Act claim is granted.  With respect to remedies, Plaintiff's request for

injunctive relied is granted.  Plaintiff's request for damages, however, is denied.

Attorneys fees and costs are granted.  An appropriate Order shall follow.


/S/ Joseph H. Rodriguez
U.S.D.J.


Date: June 30, 2009


36